IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff-Respondent, | § § | |
| V. | § § | CRIMINAL ACTION NO. H-10-862-2 |
| | § | CIVIL ACTION NO. H-12-896 |
| DONNIE HUE SMITH, | § § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Donnie Hue Smith's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.212),[1] and the United States' Response and Motion to Dismiss Movant's § 2255 Motion (Document Nos.218, 219). After reviewing Movant's § 2255 Motion, the Government's Response and Motion to Dismiss, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 219) be GRANTED, and that Movant Donnie Hue Smith's § 2255 Motion (Document No.212) be DENIED.

I.  **Procedural History**

Movant Donnie Hue Smith ("Smith"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is Smith's

---

[1] Donnie Hue Smith's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-12-896 and at Document No. 212 in Criminal Action No. H-10-862.

first attempt at § 2255 relief.

On December 14, 2010, Smith was charged by Indictment with conspiracy to commit wire fraud in violation of 18 U.S.C. §1349 (Count 1). (Document No. 1). On April 15, 2011, Smith pleaded guilty without a written plea agreement. (Document No. 65).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared. (Document No. 113), to which Smith filed written objections (Document No. 103). Smith also filed a Sentencing Memorandum. (Document No. 104). Pursuant to the PSR, Smith's advisory guideline sentencing range was calculated as follows: (1) Smith had a base offense level of 7 under U.S.S.G. § 2B1.1. Because the total intended loss was $408,536.59, pursuant to U.S.S.G. §2B1.1(b)(1)(H), Smith's base offense level was increased by 14 levels. Because the offense charged involved sophisticated means, pursuant to U.S.S.G. §2B1.1(b)(9)(C), Smith's base offense level was increased by 2 levels. Smith's base offense level under U.S.S.G. § 2X1.1(a) was 23. (2) Because Smith accepted responsibility and did so in a timely manner pursuant to U.S.S.G. § 3E1.1(a) and (b), his base offense level was reduced by 3 levels. (3) With an adjusted offense level of 20, and a criminal history category if III, he had an advisory guideline sentencing range of 41 to 51 months.

On September 2, 2011, Smith was sentenced to a total term of imprisonment of 41 months, to be followed by a 3 year term of supervised release, a special assessment of $100.00, and restitution in the amount of $199,914.19. (Document No. 151). Judgment was entered on September 16, 2011. (Document No. 156). With respect to Smith's sentence, the Court stated:

> Donnie Hue Smith comes before the Court after entering a plea of guilty of conspiracy to commit wire fraud. Mr. Smith participated in a conspiracy to defraud Columbia Lloyds Insurance Company as well as other co-conspirators, both indicted and unindicted. He joined the conspiracy on January 26, 2009, and remained involved until July the 10th, 2009. He attempted to cash a 180-thousand-dollar check

2

> written to his attention from Columbia Lloyds at Wachovia Bank. A Wachovia Bank representative became suspicious of the check, at which point Columbia Lloyds was contacted, and shortly thereafter it was discovered that the check had not been authorized for disbursement to Columbia Lloyds.
>
> During this period of involvement he received eleven transactions consisting of ten automated clearinghouse transfers and a 180-thousand-dollar check from Columbia Lloyds. There was a $19,606.14 transfer which was intended for Mr. Smith but did not fund. There were also additional checks provided to the Defendant.
>
> The intended loss would be the $408,536.59 minus the $19,606.14, and I'm not capable of doing the math in my head, and the actual loss was $199,914.19.
>
> He's been held to an average role in the conspiracy.
>
> The probation officer cited factors that may warrant an upward departure and Miss Minnis has made an argument for an upward departure. Considering all of the factors and in lieu of an upward departure, I am going to give Mr. Smith a sentence at the high end of the applicable guideline range. I believe that such a sentence would adequately reflect the seriousness of the offense, promote respect for the law, provide deterrence to future criminal conduct and address the Defendant's background and characteristics, as outlined in 18, United States Code, Section 3553(a). (Transcript of Sentencing Hearing, Document No. 221, p. 24-5).

Thereafter, Smith filed a motion pursuant to Fed.R.Crim.P. 36, to correct his judgment because at the time Smith was sentenced on September 15, 2011, no mention was made that Smith had a parole violator's warrant pending in Louisiana, and as a result, the judgment did not specify whether Smith's federal sentence should run concurrently with any sentence ultimately imposed by the state of Louisiana. (Document No. 173). Judge Harmon granted Smith's motion (Document No. 175), and an Amended Judgment was entered on December 2, 2011, (Document No. 182) that clarified that Smith's federal sentence was to be served concurrent to any sentence imposed by the state of Louisiana. Smith did not appeal his sentence.

Within one year of his conviction being final, Smith timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 212), and a Memorandum of Law in Support.

(Document No. 213). Smith challenges the calculation of his advisory guideline sentence. Smith argues that the Court erred in calculating the amount of loss/restitution. Smith further argues that his base offense level should not have been adjusted upward by two levels based on his co-defendant's use of sophisticated means. Finally, Smith argues that his counsel was constitutionally ineffective for failing to object to the amount of loss/restitution calculation and failing to object to the sentencing enhancement based on his co-defendant's use of sophisticated means.

The Government, in its Motion to Dismiss and Response to Smith's § 2255 Motion (Document Nos. 218, 219) argues that Smith's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because Smith is not entitled to relief. According to the Government, Smith's challenges to the application of his advisory guideline sentence are not cognizable in a federal habeas proceeding. As to his remaining ineffective assistance of counsel claims, the Government contends that Smith has not shown that his counsel was deficient nor has he shown he was prejudiced by the alleged errors.

## II. Discussion

The background facts relevant to Smith's claims are set forth in the PSR. Smith, Carla Jean Johnson, Royce Lamar Smith and Nettie Marie Smither were charged with conspiracy to commit wire fraud. The conspiracy and in particular, Smith's role, was summarized as follows in the PSR. The PSR states in pertinent part:

### Overview

4. Carla Jean Johnson ("Johnson") was employed at Columbia Lloyds Insurance Company ("Columbia Lloyds") as a comptroller/accountant starting in May of 2005. As part of her duties, Johnson was trusted with relatively unchecked access to Columbia Lloyds' bank accounts. In July of 2009, Columbia Lloyds received a

telephone call from Wachovia Bank regarding someone suspiciously attempting to deposit a $180,000 check from Columbia Lloyds. It was quickly discovered that Johnson had issued an unauthorized check to **Donnie Hue Smith ("Donnie")** for that amount. On Monday, July 13, 2009, Johnson was confronted and terminated from her position at Columbia Lloyds.

5. A further inquiry into the bank records of Columbia Lloyds revealed that Johnson had engaged in approximately fifty unauthorized financial transactions. Columbia Lloyds has discovered approximately thirty unauthorized Automated Clearing House (ACH) transfers, approximately ten unauthorized wire transfers, and approximately eleven unauthorized checks (including the $180,000 check that was not cashed), totaling $1,119,347.27.

6. The unauthorized transactions were to the benefit of fourteen different individuals, including Johnson. Some of these individuals have been interviewed and have all told very similar stories. Essentially, Johnson orchestrated a scheme wherein Johnson contacted individuals and asked for their bank account information. Johnson then told them that she was transferring money to their account and that she wanted them to keep a portion and give the rest back to her. Funds were returned to Johnson in the form of checks, cash, and bank transfers. Johnson took efforts to seemingly obscure the money trail in variety of ways, such as, having money deposited into her children's bank accounts which were under Johnson's control, having payments made by third parties toward Johnson's debt obligations, and filtering funds through the Attorney General Child Support Unit. In some cases, Johnson instructed individuals to send money to Nettie Smither ("Smither"), who was also an employee at Columbia Lloyds. Smither, in turn, would send money to Johnson and keep a portion for herself.

7. Johnson was previously convicted of theft of property relating to a similar embezzlement from Nabor's Drilling in 2005, along with her boyfriend at the time, Royce Smith ("Royce"). Johnson and Royce both made substantial payments toward their restitution obligations of their previous offense after they became aware of the FBI's investigation. Similarly, Johnson and Royce both, through counsel, requested an early termination of their probation, from their Nabor's Drilling related offense, after they became aware of the FBI's investigation.

8. Columbia Lloyds obtained a default judgment against Johnson in a civil action.

9. The following paragraphs will describe each defendants level of involvement within the conspiracy, as well as provide the total loss caused to Columbia Lloyds and the total amount of restitution owed to Columbia Lloyds by each defendant listed in the Indictment.

Donnie Hue Smith's Relevant Conduct

10. **Donnie** joined the conspiracy on January 26, 2009 and remained involved until July 10, 2009. **Donnie** and Johnson attempted to cash a $180,000 check written to **Donnie's** attention from Columbia Lloyds at a Wachovia Bank. A Wachovia Bank representative became suspicious of the check, at which point Columbia Lloyds was contacted and, shortly thereafter, it was discovered that the check had not been authorized for disbursement by Columbia Lloyds.

11. During his period of involvement, **Donnie** received 11 transactions consisting of 10 Automated Clearing House (ACH) transfers ($174,914.19) and $180,000 check from Columbia Lloyds. There was a $19,606.14 transfer which was intended for **Donnie**, but did not fund. There was also a $7,000 check that Johnson provided **Donnie** from her personal bank account. Additionally, **Donnie** accompanied an unindicted co-conspirator named Andre Tremond Phillips, to a check cashing establishment to cash a $9,016.26 check. This check was written by Johnson to Phillips' attention, with the understanding that the funds would be provided to **Donnie** for a large drug purchase. Johnson did not feel comfortable providing **Donnie** funds for drug purchases, and therefore, the funds were directed to Phillips instead. Lastly, **Donnie** received an $18,000 transfer from an unindicted co-conspirator named Shane Ladell Rhodes.

12. **Donnie** was involved in a total of $408,536.59 in intended loss to Columbia Lloyds, as well as $199,914.19 in actual loss. Restitution in the amount of $199,914.19 is due to Columbia Lloyds, joint and several with Johnson.

13. **Donnie** held an average role in the conspiracy. The scheme involved sophisticated means as described in the overview section of this report. (Emphasis in original).

With respect to Smith's claims that the Court erred its application of this advisory guideline sentence, the Fifth Circuit Court of Appeals has held that "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996). Likewise, to the extent that Smith challenges the imposition of restitution in the amount of $199,914.19 this claim is not cognizable under § 2255. *See United States v. Hatten*, 167 F.3d

884, 887 (5th Cir. 1999) (holding "complaints against restitution may not be addressed in a § 2255 proceeding"). Accordingly, Smith's challenges to Court's calculation of loss, intended and actual, and his two level increase to his base offense level based on his co-defendant's use of sophisticated means are without merit

As to Smith's ineffective assistance of counsel allegations, namely that counsel was constitutionally ineffective for failing to object to the amount of loss that he was held accountable for in calculating enhancements to his base offense level, failing to object to the two level increase to his base offense level based on his co-defendant's use of a sophisticated device, and failing to object to the amount of restitution, Smith's allegations do not demonstrate either deficient performance or prejudice on the part of counsel.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate

assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied*, 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The United States Supreme Court in *Harrington v. Richter*, ___U.S.___, 131 S.Ct. 770, 778

(2011) recently discussed *Strickland* in the context of a habeas proceeding involving a state conviction. While *Harrington* did not involve a federal habeas proceeding involving a federal conviction, the Court's discussion of *Strickland* and ineffective assistance of counsel claims is instructive and equally applies to claims brought in a federal habeas proceeding such as those raised herein.

With respect to ineffective assistance of counsel claims, the Court observed that there are "'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S.Ct. at 791 (emphasis added). Finally, in considering the prejudice prong of *Strickland*, the likelihood of a different result must be substantial, not just conceivable. *Id.* at 791-792 (Citations omitted). As a result, "'[s]urmounting *Strickland's* high bar is never an easy task.'" (quoting from *Padilla v. Kentucky*, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485 (2010)). The Court observed:

Unlike a later reviewing court, the attorney observed the relevant proceedings, knew

9

>of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington*, 131 S.Ct. at 778 (citations omitted).

As to the specific examples of ineffective assistance of counsel which Smith cites in support of his ineffectiveness claims, such as that counsel could have and should have objected to the intended loss he was held accountable for purposes of calculating his adjusted offense level under U.S.S.G. § 2B1.1; that counsel could have and should have objected to the two level upward adjustment to his offense level based on his co-defendant's use of sophisticated means; and that counsel could have and should have objected to the actual loss incurred by Columbia Lloyds as a result of the wire fraud conspiracy for purposes of calculating the amount of restitution, the record either affirmatively shows that Smith's counsel was not deficient or there is no evidence that the alleged errors prejudiced Smith within the meaning of *Strickland*.

Smith suggests that counsel was constitutionally ineffective for failing to argue that the amount of loss calculation should have been $199,914.19 less $19,606.14 for a transfer which was intended for him but did not fund and less $18,000. Based on Smith's calculation, his adjusted offense level would have been 17, and with a three point adjustment downward for acceptance of responsibility, and a criminal history category of III, he would have had an advisory guideline sentencing range of 21 to 27 months. To the extent Smith argues that counsel could have and should have argued that the amount of loss should have been the same sum he was ordered to pay for restitution, an attorney is not ineffective for failing to raise a meritless objection. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *Sones v. Hargett*, 61 F.3d 410, 415, n. 5 (5th Cir. 1995).

10

Because the substantive offense cited in the conspiracy count was wire fraud, U.S.S.G. §2B1.1 applied. Smith's base offense level under U.S.S.G. § 2B1.1(a)(2) was 7. The guideline further provides in situations such as Smith's where the loss exceed $5,000, the offense level is to be enhanced as set forth by the table in U.S.S.G. § 2B1.1(b)(1). In addition, Application Note 3 of U.S.S.G. § 2B1.1 provides that the loss should be determined by the greater of the actual loss or intended loss, which is defined in relevant part as "the pecuniary harm that was intended to result from the offense." As discussed supra, Smith was involved in intended loss to Columbia Lloyds of $388,930.45 and $199,914.19 in actual loss. Because the intended loss to Columbia Lloyds was greater than the actual loss, counsel's performance did not fall below that of *Strickland* for not arguing otherwise. The record further shows that counsel attempted to reduce the amount of loss used to calculate his advisory guideline sentence. Counsel, in writing and at the sentencing hearing, argued that the amount of loss should not include a transfer in the amount of $19,606.14 that was intended for Smith but did not fund because Smith did not know about the transfer. Counsel also attempted to clarify whether a $18,000 transfer to Smith from an unindicted co-conspirator was double counted. (Document No. 103, Transcript of Sentencing Hearing, Document No.221, p. 3-8). Judge Harmon granted Smith's objection to the inclusion of $19,606.14. As a result, Smith's advisory guideline sentence range was lowered to 33 to 41 months from 41 to 51 months.

Smith next argues that counsel was constitutionally ineffective for failing to object to the two point increase to his base offense level based on his co-defendant's use of sophisticated means. According to Smith, counsel could have and should have argued that Smith had no knowledge of sophisticated means used by his co-defendant and that his role in the wire fraud conspiracy was anything but sophisticated. Smith argues that counsel could have and should have argued that he had

11

"no way of knowing what his co-defendant Carla Johnson was doing inside Columbia Lloyds to hide the transactions." (Document No. 213, p. 5). Again, the record shows that counsel objected in writing (Document No. 103, p.2-3)[2] and at the Sentencing Hearing (Transcript of Sentencing Hearing, Document No. 221, p. 8-14). The record refutes Smith's assertion that counsel failed to object to the two level increase. Smith's allegations of what counsel could have and should have argued parrot counsel's objections to the PSR. This claim fails.

Finally, Smith alleges that his counsel was constitutionally ineffective for failing to object to the amount of restitution imposed. Smith argues that counsel could have and should have argued that Smith should not have been responsible for $19,606.14 transfer that did not fund and for $18,000 that Smith received from unindicted co-conspirator Shane Ladell Rhodes. Based on Smith's calculation, the amount of restitution should have been $162,308.25. As discussed supra, counsel objected to the amount of loss, intended and actual, that was used to calculate his adjusted offense level under U.S.S.G. § 2B1.1. The Mandatory Victims Restitution Act ("MVRA") requires the Court to order restitution upon conviction of "an offense against property ... including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(a)(1),(c)(1)(A)(ii). The MVRA further provides that, "[i]n each order of restitution, the Court shall order restitution to each victim in the full amount

---

[2] Smith argued the two level increase was unwarranted given that:
From Donnie Smith's point of view, he was receiving deposits and transfers into his account and giving a part of it back to Carla Johnson. He had no way of knowing what Carla Johnson was doing inside of Columbia Lloyds to hide transactions. For example, how could Donnie Smith know that Carla Johnson was filtering funds through the Attorney General Child Support Unit, or that she was hiding money by having payments made toward her personal debt obligations? Mr. Smith was on the outside of this scheme, and was nothing more than yet another conduit that Carla Johnson was using to syphon money out of her employer. His acts were not sophisticated at all, and the PSR does not establish that he knew or should have known the full extent of Carla Johnson's activities. ).

12

of each victim's losses as determined by the Court." 18 U.S.C. § 3664(f)(1)(A). The Court determined that Columbia Lloyd's actual loss was $199,914.19.

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss Movant's § 2255 Motion (Document No. 219) be GRANTED, and that Movant Donnie Hue Smith's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 212) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 5th day of September, 2012.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE